UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RONDA WILLIAMS, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>    Defendant. ) | CIVIL NO. 1:17cv345 |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for DIB and/or SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019 (Ex. 9D).

2.  The claimant has not engaged in substantial gainful activity since May 16, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*) (Ex. 5D).

3.  The claimant has the severe combination of impairments of cervical and lumbar degenerative disc disease with pain clinic diagnoses of lumbar sacroilitis, radiculitis and pain, hypertension, and chronic obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to lifting, carrying, pushing and pulling ten pounds frequently and twenty pounds occasionally. The claimant can sit at least six hours in an eight-hour workday and stand and/or walk six hours in an eight-hour work day. The claimant should not climb ropes, ladders, or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally balance. The claimant can occasionally bend and stoop in addition to what is required to sit. The claimant can occasionally use ramps and stairs. Aside from use of ramps and stairs on an occasional basis, the claimant should not work upon uneven surfaces. The claimant should avoid work within close proximity to open and exposed heights and open and dangerous machinery such as open flames and fast moving exposed blades. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes and gases and excessive heat, humidity and cold such as when working outside or withing a sawmill, boiler room, chemical plant, green house, refrigerator or sewage plant. The claimant should avoid work involving concentrated exposure to vibration such as using heavy sanders. The claimant is limited to occasional overhead work and occasional overhead reaching.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on December 14, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 16, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 73- 85).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on February 12, 2018. On April 23, 2018, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 7, 2018. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other

> work within the economy? An affirmative answer leads either to
> the next step or, on steps 3 and 5, to a finding that the claimant is
> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff filed a *pro se* Request for Review to the Appeals Council on July 5, 2016 (Tr. 273) on the basis that "I don't agree I don't think he got all the evidnge[sic] it wasn't all in" (Tr. 273). In addition, Plaintiff submitted three additional sets of evidence (Tr. 2). The evidence from Dr. Henry Gindt was not exhibited or considered by the Appeals Council as it was allegedly duplicated at Exhibit 6F (Tr. 2). The remaining two additional items of evidence are at Tr. 9-38 and at Tr. 39-67. However, this additional evidence was not considered by the Appeals Council because "The Administrative Law Judge decided your case through May 4, 2016. The additional evidence does not relate to this period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 4, 2016" (Tr. 2).

On June 9, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1), thereby rendering it the Agency's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The complaint in this matter was timely filed on August 13, 2017. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Plaintiff was born on December 14, 1964 (Tr. 97). She was 51 years of age as of the date of the hearing, making her "closely approaching advanced age" at the time of the hearing pursuant to Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines 202.00 (d). She testified

that she was 5' 6" tall and weighed approximately 125 pounds (Tr. 98). She was 48 years old on her alleged disability onset date of May 16, 2013 (Tr. 274) making her a "younger individual" pursuant to Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines (h)(1). She testified that she completed the ninth grade (Tr. 98). At the time of her filing her application she had stopped working due to her conditions (Tr. 311). She did perform some part-time work (Tr. 100) since her alleged onset date at Don's Tap (Tr. 99), however, this work did not rise to the level of substantial gainful activity (Tr. 73). Further, Plaintiff notes that this part-time employer was the employer of her sister for over twenty-five years and was "just trying to help me out" (Tr. 101) by giving her work, but she was no longer able to continue working there in part due to increased pain (Tr. 101). Plaintiff testified that she was given accommodations at this part-time job including the ability to sit when needed and unscheduled breaks as needed (Tr. 104).

Plaintiff has a work record extending back to 1979 (Tr, 289) and in the thirty-four (34) years from 1979 through 2013, there were only three years in which Plaintiff did not report earnings (Tr. 289-290). Plaintiff indicated that she worked as a CNA (Tr. 101. 312) and as a "waitress, supervisor, fourth manager" for JD Restaurant (Tr. 102).

Plaintiff alleged in her application that she suffered from "Back Problems," "Lumbar Disc Prolapse with radiculopathy, and COPD." (Tr. 311). In addition, while Plaintiff does not specifically allege anxiety or depression in her initial application, she notes on her application that she was taking Diazapam [sic] and Valium (Tr. 313), medications commonly prescribed for anxiety. In her Request for Reconsideration Disability Appeal Report, she notes taking Amlodipine as a "nerve blocker," Citalopran as "stress medication" and medication for "pain management." (Tr. 334).

6

Additionally, at the hearing, Plaintiff alleged low back pain, shoulder pain, right hip pain (Tr. 104). She also alleged COPD (Tr. 108). She testified that her pain in her shoulder and left arm pain were more recent than 2013 (Tr. 111). She reported left arm numbness (Tr. 115) and right leg numbness (Tr. 128), neck pain (Tr. 123, 128), difficulty sleeping (Tr. 126), and anxiety (Tr. 129).

The record shows that Plaintiff alleged "Back problems- pain in lower back; left leg numb. Cramping in foot" (Tr. 704), in addition to "Lumbar Disc Prolapse With Radiculopathy," "COPD" and "borderline Diabetic- gets weak and dizzy" (Tr. 704)

Plaintiff noted difficulties with her daily activities including dressing (due to having to bend to dress), bathing (due to difficulties getting out of the tub), and using the toilet (due to difficulties bending to sit).

Plaintiff has a long history of both cervical and lumbar back problems. In 2013, she was diagnosed with Left L4-5 disc herniation and L5-S1 lateral recess stenosis and clinical evidence of left LS radiculopathy (Tr. 373) and was scheduled for a lumbar laminectomy (Tr. 375). Central canal stenosis and bilateral neuroforaminal stenosis is noted on a cervical MRI of June 23, 2014 at Tr. 734. The MRI revealed an impression of "Intact C5-C6 bony fusion with mild straightening of the cervical spine. Moderate multilevel degenerative disc disease of the cervical spine predominately involving the C3-C4, C4-C5, and C6-C7 levels associated with varying degrees of central canal and neuroforaminal stenosis and mild mass effect on the cervical spinal cord as described above. No underlying cord edema or myelomalacia is identified." (Tr. 734)

Plaintiff also has significant degenerative wrist issues on her left wrist (Tr. 394). An xray showed "There is moderate sclerosis at the first carpometacarpal joint compatible with a

7

degenerative process. There is narrowing sclerosis of the articulation of scaphoid and trapezium and trapezold." (Tr. 394). She also suffers from enlarged lymph nodes and has difficulty swallowing (Tr. 395).

Plaintiff reported that her medication for her COPD made her tired (Tr. 108-109), that she only takes them once in a while (Tr. 109) and that she feared interaction with other medications (Tr. 110). Plaintiff testified at the hearing that she could stand for about a half an hour without needing to sit down and could walk for only half a block (Tr. 114) due to leg and back pain and heavy breathing (Tr. 115). This is consistent with the RFC opined by Dr. Ollerton at Tr. 705 who noted that Plaintiff can walk less than 50 feet, stand 5-10 minutes, climb half a flight of stairs, and lift 8 lbs with the right arm, 8 lbs with the left arm, and 16 lbs with both arms (Tr. 705).

Plaintiff testified that she only had health insurance approximately one year prior to the hearing and prior to this had a difficult time paying for treatment (Tr. 105). She has previously attempted to apply for Medicaid but testified that her application was denied (Tr. 105). Plaintiff stated that she did not know about HIP (Health Indiana Plan) or statewide insurance (Tr. 106). Her inability to afford care is substantiated at Tr. 370-371 whereby verification of a cancelled surgery is noted due to lack of insurance despite having applied for Medicaid.

In support of remand, Plaintiff first argues that the ALJ erred at Step 4 by failing to consider her non-severe impairments of depression and anxiety in the RFC analysis and to make accommodations for those impairments. In his decision, the ALJ found that Plaintiff suffers from the depression and anxiety which the ALJ found to be nonsevere medically determinable impairments. (Tr. 74). The ALJ stated that "[t]he claimant's medically determinable mental impairments of anxiety, depression, and alcohol abuse considered singly and in combination, do

not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (Tr. 74).

Plaintiff argues that despite identifying Plaintiff's depression and finding it to be "non-severe", the ALJ failed to consider the impact of this impairment on Plaintiff's RFC, and also failed to provide any mention of accommodations for this impairment.

When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment. 20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir.2009); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir.2009). A failure to fully consider the impact of non-severe impairments requires remand. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir.2003)." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

*Murphy v. Colvin* reiterates this point, "An RFC determination must account for all impairments, even those that are not severe in isolation. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir.2009)." *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014), as amended (Aug. 20, 2014). The regulations and case law clearly provides that the ALJ must consider the "aggregate effects" of the entire constellation of ailments. 20 C.F.R. § 404.1523; *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir.2002); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir.2000); *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir.2000).

In the present case, Plaintiff contends that the ALJ has failed to meet this burden and has failed to consider the "aggregate effects" of all impairments. The Commissioner, in response, claims that Plaintiff failed to carry her burden of establishing the existence of any associated functional limitations not already considered by the ALJ.

9

However, as Plaintiff points out in reply, the record is clear that the ALJ found that Plaintiff had functional limitations due to anxiety and depression, such as mild limitations in social functioning and mild limitations in concentration, persistence, and pace. Yet the ALJ failed to discuss these limitations in his RFC analysis. The ALJ's RFC analysis begins at Tr. 76 and continues through Tr. 84. There is no discussion or even mention of depression from Tr. 76-Tr. 84. There is only one discussion of anxiety, whereby the ALJ notes, "She indicated that she sleeps four to five hours a night. The claimant reported having issues with anxiety in the past but has not had significant issues recently. The claimant acknowledged that there periods where she was not taking her psychotropic medications." (Tr. 77).

Plaintiff argues that even if she may not have recently had significant issues with respect to her anxiety, the ALJ was obligated to discuss the period from the alleged onset date forward and not just the most recent evidence, as even an isolated bout with anxiety could give rise to a claim for a fixed period of disability.

Clearly, the ALJ not only had an obligation to discuss those functional limitations he identified, he also had an obligation to discuss Plaintiff's anxiety and depression. The Commissioner assumes that because there was no discussion that the ALJ found no limitations (which is incorrect). Even if the ALJ had found no limitations with respect to these impairments, he nevertheless had an obligation to discuss his findings in relation to Plaintiff's non-severe impairments. As the ALJ's silence on this point precludes meaningful judicial review, remand is warranted. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir.2002); *see also Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).

In a related argument, Plaintiff contends that the ALJ erred at Step 4 by failing to include

his findings of mild restrictions in concentration, persistence, and pace, and mild restrictions in social functioning, in the RFC, and failed to make accommodations for these findings. As the case is being remanded on the above issue, the ALJ, on remand, is directed to fully incorporate all limitations and accommodations into his new RFC analysis.

Next, Plaintiff argues that the ALJ erred in Step 2 and Step 4 by failing to identify and incorporate into the RFC analysis all of the claimant's medically determinable severe and non-severe impairments. Plaintiff notes that not only did the ALJ fail to consider her non-severe impairments of depression and anxiety as discussed above, the ALJ also failed to consider a whole list of other impairments, including Plaintiff's left wrist degenerative changes shown on x-ray at Tr. 394 and Tr. 405 demonstrating "moderate sclerosis at the first carpometacarpal joint compatible with a degenerative process", Plaintiff's enlarged lymph nodes and difficulty swallowing (Tr. 395), changes of the lung apices (Tr. 395), left foot numbness (Tr. 420), left arm numbness (Tr. 688), left leg numbness (Tr. 688), blurred vision (Tr. 688), sinus tachycardia on EKG (Tr. 703), parathesis of the left arm (Tr. 733), numbness and tingling in the arm and hand and neck pain radiating down the left arm (Tr. 741).

Clearly, the ALJ's failure to consider these medically determinable impairments constitutes error. Not only does the ALJ fail to discuss whether these other alleged impairment are severe, the ALJ's opinion provides no discussion of these other impairments and their impact on Plaintiff's RFC. As the ALJ failed to discuss these other impairments, it cannot be determined whether he considered the intensity and persistence of symptoms such as pain from other impairments in considering Plaintiff's capacity to work.

It is reversible error for the ALJ to disregard impairments and conditions contained in the

11

record when formulating the RFC. In the present case, the ALJ ignores not only the claimant's left wrist changes, but also the claimant's repeated complaints of numbness and tingling in the left hard and hand including at Tr. 741. This is not harmless error. Plaintiff's difficulties with her hands and arms could potentially impair her ability to reach, handle, finger, and feel. A review of all of the jobs discussed by the ALJ at Tr. 85 show that the marker and the mail clerk jobs require frequent reaching, handling, and fingering while the cafeteria attendant and the cleaner jobs require frequent reaching, frequent handling, and occasional fingering. Thus, a limitation of occasional reaching or occasional handling would eliminate all of the jobs discussed by the ALJ. Since the ALJ ignored medically determinable impairments, remand is required.

Next, Plaintiff argues that the ALJ erred at Step 3 by failing to sufficiently articulate whether Plaintiff met a listing. When determining whether Plaintiff met or equaled a listing, the ALJ made a finding that Plaintiff does not meet a listing without offering a single citation to the record. The ALJ simply recited the requirements of the listing and stated that the evidence of the record does not support this finding, without any discussion of the record or of equivalency. In *Brindisi v. Barnhart*, the Seventh Circuit criticized a similarly brief analysis of whether the claimant met a listing. 315 F.3d 783, 786 (7th Cir. 2003).

While the ALJ herein notes which listings he considered, by failing to provide any citations to the record he made any attempt at judicial review impossible. Plaintiff contends that the ALJ's decision, including the failure to find that Plaintiff meets a listing, is not based on substantial evidence. Again, it is clear that remand is appropriate for a proper analysis of whether Plaintiff meets or equals a listing.

Next, Plaintiff argues that the Appeals Council erred in failing to consider the new

evidence submitted. As noted above, Plaintiff submitted additional evidence to the Appeals Council contained at Tr. 9-38. A second submission was made at Tr. 39-67

This court finds that the Appeals Council erred in not accepting the new evidence. The new evidence related to the period and was evidence of a condition not previously considered by the ALJ: mild concentric left ventricular hypertrophy (Tr. 11) and Grade 1 (mild) left ventricular diastolic dysfunction (Tr. 12). Further the right sacroiliac joint injection demonstrated a problem with the sacroiliac joint in the spine. The minimal bronchodilator response portrays in a different light Plaintiff's failure to consistently use her breathing medications, as it was demonstrated by breathing tests that these prescriptions provide little benefit to Plaintiff.

The evidence is new as it is from a test that postdates the ALJ's decision. Plaintiff has good cause for not submitting it earlier as it was not in existence at the time of the hearing. It appears that the ALJ may have reached a different decision as to whether Plaintiff could perform light work and may have limited her to sedentary work had he known of her left ventricular hypertrophy and left ventricular diastolic dysfunction, especially when combined with her COPD that does not resolve with bronchodilator treatment. This court agrees with Plaintiff that the evidence obviously relates to a time prior to the ALJ's decision because Plaintiff could not have developed left ventricular hypertrophy and Grade 1 left ventricular diastolic dysfunction in a short period of time.

The Commissioner argues that because the Appeals Council denied review, the ALJ's decision is the final decision, and judicial review is not available for the Appeals Council action. However, as Plaintiff notes, the Notice of Appeals Council Action clearly states: "If you disagree with our action and file a new application instead of filing a civil action, you might lose some

13

benefits or not qualify for any benefits. So, if you disagree with our action, you should file a civil action within 60 days as described below." (Tr. 2). Further, instructions are given on how to file a civil action in the United States District Court for judicial review (Tr. 2-3).

*Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), is squarely on point. *Nelson* states, "When the Appeals Council denies review and determines that the ALJ's decision is final, we review the ALJ's determination as well as any new evidence which the Appeals Council may have determined to be immaterial." Accordingly, remand is proper.

Next, Plaintiff argues that the ALJ's decision is not supported by the record because the ALJ gave the state agency medical consultants the greatest weight even though the consultants had only seen Exhibits 1F-12F. Plaintiff argues that these State Agency consultants rendered an opinion without having the opportunity to review the entire record. Dr. Eskonen's last evaluation was dated 7/17/2014 (Tr. 155). The last report of Dr. Fife was on 9/24/2014 (Tr. 180). Neither doctor had the benefit of reviewing any of the medical records past Exhibit 12F. Thus, records at Tr. 725-822 were never considered by these consulting doctors. It follows that their opinions were not supported by the evidence as a whole. As the ALJ relied on these doctors and gave them "great weight," his opinion likewise is not supported by substantial evidence Thus, remand is required on this issue also.

Lastly, Plaintiff argues that the ALJ "cherrypicked" the record by indicating he gave significant weight to Dr. Ollerton, a consulting examiner, but failed to consider all of the restrictions found by Dr. Ollerton. The ALJ states:

> "In May 2014, Andy Ollerton, M.D., a consultative examiner, noted that the findings were for some sensation loss, nerve impingement signs and mild instability but such was more likely due to deconditioning as opposed to balance

issues. She was to avoid heavy lifting, try physical therapy, occupational therapy or balance training, and avoid chronic obstructive pulmonary disease triggers (Ex. 8F). The undersigned grants significant weight to this assessment . . ." (Tr. 82).

Plaintiff argues that the ALJ failed to discuss the portion of Dr. Ollerton's assessment which support a finding of disability. Dr. Ollerton noted that Plaintiff can walk less than 50 feet, can stand for 5-10 minutes, can climb ½ flight of stairs, and can lift 8 lbs with the left arm and 8 lbs with the right arm and 16lbs with both arms (Tr. 705). He further noted that Plaintiff has loss of appetite, fatigue and night sweats (Tr. 704). She has cough and shortness of breath (Tr. 704) and chest pain, edema in the left foot, and palpitation on cardiovascular review of symptoms (Tr. 704). In addition, he noted that Plaintiff claims that she is a borderline diabetic which causes her get weak and dizzy. (Tr. 704). Dr. Ollerton noted that Plaintiff has a pulse oxygen reading of 95% and a body temperature of 94.9 degrees Fahrenheit (Tr. 705). Additionally, Dr. Ollerton found that Plaintiff would be unable to read very small print (Tr. 706), thus potentially restricting her from jobs that requires near acuity such as the Mail Clerk and Price Marker and jobs that require occasional near acuity such as cafeteria attendant. Dr. Ollerton noted an antalgic gait (Tr. 707). He noted that Plaintiff is able to squat with discomfort and has abnormal straight leg raise both sitting and supine. (Tr. 707). He also noted abnormalities in sensory testing including filament test and sharp dull test (Tr. 707). Neurological notes "dec left foot." (Tr. 708). Dr. Ollerton also noted significant deficits in range of motion, denoting a 30-degree deficit in forward lumbar flexion, a 15 degree deficit in lumbar extension, and 15 degree deficit in bilateral lumbar flexion. He noted a 10-degree deficit in left ankle dorsiflexion and a 20 degree deficit in left plantar flexion (Tr. 709).

Yet, in describing Dr. Ollerton's opinion, the ALJ stated: "Further, the assessment was consistent with the objective medical evidence in Exhibits 14F and 16F including negative straight leg raises, normal spine motion, normal sensation, normal strengths and positive and symmetrical deep tendon reflexes." (Tr. 82). This is plainly incorrect. Dr. Ollerton noted positive bilateral straight leg raises, sitting and supine, severe deficits in lumbar spinal range of motion, and decreased sensation.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir.2009)." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Thus, the decision must be remanded as it is not supported by substantial evidence.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: June 21, 2018.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court